**ALADDIN HOTEL CORPORATION et al., Plaintiffs-Appellees,**

and

**Josephine Alexander d/b/a Hairem Beauty and Barber Shop et al., Plaintiffs-Intervenors,**

v.

**NEVADA GAMING COMMISSION et al., Defendants-Appellants.**

No. 79-3497.

United States Court of Appeals, Ninth Circuit.

June 5, 1980.

Rehearing Denied June 25, 1980.

As Amended July 14, 1980.

Rehearing Denied Aug. 15, 1980.

583

Richard H. Bryan, Atty. Gen., Carson City, Nev., argued, for defendants-appellants; Nancy S. Roberts, San Francisco, Cal., and Raymond D. Pike, Edward R. Kane, Las Vegas, Nev., on brief.

Richard Wright, Stanford J. Rosen, Rosen, Remcho, Henderson, San Francisco, Cal., argued, for plaintiffs-appellees; Dennis M. Sabbath, Las Vegas, Nev., on brief.

Before TANG, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a preliminary injunction entered by the Nevada district court barring revocation of the Aladdin Hotel Corporation's gaming license by the Nevada Gaming Commission in order to permit the owners of the casino a reasonable time to find a purchaser for the hotel. We reverse the district court's order for lack of federal jurisdiction.

In March, 1979, the Nevada Gaming Control Board initiated efforts to revoke the Aladdin's gaming license following the Corporation's conviction of federal felony offenses. Pursuant to Nev.Rev.Stat. § 463.-312(9), the Commission entered an emergency order which suspended Aladdin's gaming license but permitted continued gaming upon certain conditions pending action on a formal administrative complaint seeking revocation.

On June 11, 1979, the Aladdin and Holding Corporation of America (HCA) executed an agreement calling for sale of the casino and resort to HCA. On June 14, 1979, the date set for hearing on the administrative complaint, the Aladdin and the Gaming Control Board entered into an agreement, accepted by the Commission, to the effect that the Aladdin would forego procedural rights accorded a gaming licensee by Nevada statute in return for the opportunity to attempt to sell the casino to a purchaser found suitable for licensing by the Commission.

Shortly after the Commission entered this order, however, HCA withdrew its application for a gaming license and cancelled its proposed purchase of the Aladdin. The Commission then notified the Aladdin that it planned to meet on August 6, 1979, for the purpose of revoking the Aladdin's gaming license. The Commission met on that date and revoked the license.

On the same day, the Aladdin and its owners appeared in federal district court and obtained a temporary restraining order barring revocation and keeping the casino open. Aladdin's complaint for an injunction alleged that it had found another prospective purchaser for the hotel, that it was in full compliance with the Commission's June order, that the closure of the hotel would result in great hardship and irreparable harm, and that the corporation and its owners were "entitled to a reasonable period of time to find, with the exercise of due diligence, a bona fide purchaser for their property" and to have the applications processed by the Commission. The complaint further alleged that the failure of the Commission to permit them a reasonable period of time to find a purchaser and to process the applications denied due process of law.

The district court held a hearing in which the Gaming Commission took the position that the stay of license revocation to which the parties agreed in June was conditioned on the completion of the HCA transaction, and that when that transaction failed, immediate revocation was appropriate. Aladdin urged that the agreement and order permitted it a reasonable time to secure a purchaser and was not conditioned solely upon the approval of HCA. The merits of the dispute thus turn upon an interpretation of the June agreement and order. On August 10, 1979, the district court entered a preliminary injunction staying any revocation of the Aladdin gaming license and closure of the casino for six months, or until

the merits of the case could be decided.[1] This appeal by the Gaming Commission followed.

We need not dwell on the evidence presented before the trial court concerning the June agreement itself. The essential question raised by Aladdin was whether it was entitled to a reasonable period of time to find a purchaser. The dispositive question in this appeal is whether the trial court had jurisdiction to consider that question.

This action is brought under 42 U.S.C. § 1983 and jurisdiction is said to be predicated on 28 U.S.C. § 1343 relating to actions for deprivation of federal rights. In its supplemental brief addressed to the jurisdictional question which the Court requested, Aladdin maintains that the issue is one of due process. Yet there is no authority for the proposition that the holder of a license is entitled, as a matter of due process, to a reasonable time to dispose of its assets prior to revocation. The line of cases upon which Aladdin relies relate solely to the question of whether a licensee is entitled to a hearing prior to revocation. Thus, in *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), it was held that due process requires a hearing before revocation of a driver's license. In *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 355 (1979), a holder of a horse trainer's license was held to have a sufficient property interest in that license to entitle him to a prompt hearing after suspension. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court held that if the government assures continued employment to a professor, and the professor may not be discharged without cause, there is a federally enforceable right to a due process hearing on the reasons for the discharge.

■ The federal question in all of those cases was the existence of a right to a due process hearing. There may well have been

federal questions concerning whether Aladdin had a federally protected property interest in its license and whether it was therefore entitled to a hearing as a matter of due process prior to either revocation or suspension of that license. As pointed out in the dissent, the district court orally pointed out that, notwithstanding the August 6, 1979, Commission meeting, there had been no such hearing held that met due process standards. This conclusion was reasonable. However, the appropriate relief would have been merely to require the Commission to give Aladdin that hearing and the necessary accompanying procedural safeguards. Such questions, however, were not the questions raised in the complaint or upon which the injunction was based. Rather, Aladdin asserted an alleged right to maintain its license and the operations of the casino for a reasonable period of time. The sole basis for that contention was not the Constitution or any federal statute, but its interpretation of the June agreement and order. As Aladdin concedes in its supplemental brief addressed to the jurisdictional question, the proper interpretation of the Commission's order and the underlying agreement of the parties are questions of state law. We decline to hold that any dispute over the operation or interpretation of a license granted by a state agency gives rise to federal jurisdiction to decide questions which are purely matters of state law.

■ Aladdin stresses the irreparable hardship which will result if the casino is closed and Aladdin were to be successful in its claims in state court, pointing out that injunctive relief is apparently not available in the state courts. Nev.Rev.Stat. § 463.-315(5), (13); *State Gaming Control Board v. Eighth Judicial District Court*, 82 Nev. 38, 409 P.2d 974 (1966). However, while irreparable harm is a prerequisite to the issuance of injunctive relief, it alone does not confer federal jurisdiction to hear questions of state law absent a specific grant of federal jurisdiction. *E. g.*, 28 U.S.C. §§ 1331, 1332, 1343.

---

1. During the pendency of this appeal the district court extended the injunction for an additional six months, or until trial on the merits.

■ In its supplemental brief to this Court Aladdin urged another ground to support its claim to federal jurisdiction. In April, 1979, the Nevada Legislature passed a statute, commonly known as Senate Bill 500, which expressly authorized the Nevada Gaming Commission to permit a licensee whose license was subject to revocation to continue gaming operations under a court-appointed supervisor pending sale. Aladdin argues that, as part of the June agreement and order, the Gaming Commission agreed that it would in good faith consider whether the provisions of S.B. 500 should be applied to Aladdin. Aladdin argues that, in addition to denying a reasonable time for the sale, the Commission also failed to give good faith consideration to application of S.B. 500 and that this conduct also denied it due process.

This issue was not presented in the complaint. There is, moreover, no contention in this Court that, independent of the negotiations between Aladdin and the Commission, there was any right enforceable under federal law to have the provisions of S.B. 500 applied. Here again Aladdin's argument boils down to the proposition that, simply by virtue of the state's alleged agreement relating to a license there exists a federally protected right to enforce that agreement in federal court. As indicated above, there is no merit in that position.

The orders for preliminary injunction entered by the district court on August 14, 1979, and February 12, 1980, are reversed and the matter is remanded with instructions to dismiss the action.

POOLE, Circuit Judge, concurring in part and dissenting in part:

I concur in reversing the preliminary injunction orders of the district court, but respectfully dissent from the majority's conclusion that the action should be dismissed for lack of jurisdiction.

I believe the district court acquired and retained jurisdiction to consider appellees' claims. Their complaint made some showing that after voluntarily surrendering their plenary rights to a full-dress revoca-tion proceeding, they still retained some due process right entitled to federal protection. That right was to have, before termination, a meaningful hearing preceded by reasonable notice, at which would be considered the questions whether by reason of the collapse of the HCA negotiations, and the appearance of unspecified "problems" with the potential second purchaser, the terms of the stipulation and order had been "violated" so as to call for termination *instanter;* or, in the Commission's own discretion, for some further consideration. If this analysis is correct, then the district court would have had jurisdiction to grant relief which would have required the Commission to give what was due from that arm of the state.

The district court thus had jurisdiction, but abused its discretion and proceeded on an erroneous legal premise in granting the preliminary injunction, because the scope of its relief went far beyond that warranted by the due process violation presented upon the facts before the court.

*Federal Subject Matter Jurisdiction.*

Taken in its basic thrust, even if not clearly pleaded or carefully presented, the complaint legitimately invoked jurisdiction under 28 U.S.C. § 1343(3). This was a "civil action authorized by law [42 U.S.C. § 1983] to be commenced by any person: To redress the deprivation, under color of any state law [etc.] of any right, privilege or immunity secured by the Constitution . . . ." The complaint (¶ 37) alleged that the Nevada Gaming Commission's order of August 6, 1979, was arbitrary and capricious and deprived plaintiffs of property without due process of law. This allegation was not frivolous. The complaint raised, implicitly if not explicitly, federal questions concerning the nature of Aladdin's property interest, what process if any was due before that interest could be taken away, and whether such due process was afforded. See *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (college professor must be given opportunity to prove legitimacy of his claim of entitlement to continued employment based on alleged state rules and understandings). The reso-

lution of such issues is not simple or easy. Plaintiffs often overstate their cause, as I believe they did here. The evidence may indeed fail to support any relief, or warrant only limited relief. But that simply results in the decision going against the claimants, or falling short of their hopes, not that the court has no jurisdiction to hear and determine their claims. The issue, not its outcome, determines federal question jurisdiction.

The majority concedes that these due process questions may have existed here, but says that Aladdin's entitlement to a hearing is not the question raised in its complaint. The procedural due process issue may not have been clearly articulated, but it was clearly present. The complaint included a general allegation of deprivation of property without due process, as well as specific allegations of substantive denials of due process. When viewed in the light of simplified federal notice pleading, their allegations were adequate for purposes of establishing subject matter jurisdiction. Moreover, subsequent stages of the case made it clear that procedural rights were at issue. Appellees' support for their motion for a preliminary injunction referred to the lack of notice and of an evidentiary hearing, as well as to alleged substantive defects in the Commission's action. On this appeal, they place additional emphasis on the denial of procedural due process.[1] Finally, in its oral findings the district court spoke at length about the denial of an opportunity for a hearing. If the court failed to tailor its relief to such denial, the result may have indicated an abuse of discretion on the merits, not a lack of subject matter jurisdiction.[2]

*Review of the Preliminary Injunction.*

The grant or denial of a preliminary injunction will be reversed if the lower court abused its discretion or based its decision upon an erroneous legal premise. *City of Anaheim, California v. Kleppe*, 590 F.2d 285, 288 n. 4 (9th Cir. 1978); *Kennecott Copper Corp., etc. v. Costle*, 572 F.2d 1349, 1357 n. 3 (9th Cir. 1978); *Douglas v. Beneficial Finance Co. of Anchorage*, 469 F.2d 453, 454 (9th Cir. 1972). The party moving for a preliminary injunction must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardship tips sharply in its favor. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975). No matter how sharply the balance of hardship tips, the "irreducible minimum" showing required on the merits is either a "fair chance of success" or that the questions must be "serious enough to require litigation." *Benda v. Grand Lodge of International Association of Machinists, etc.*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

The district court concluded that the balance of harm tipped decidedly in favor of plaintiffs and that they had a "fair chance" or "reasonable probability" of success on the merits. By "on the merits," the court apparently meant plaintiffs' ability to establish that they had a right to continue operation of the casino for a reasonable period while seeking a purchaser, and that this right could be specifically enforced by a

---

1. See Appellees' Brief 43–47; Appellees' Supplemental Memorandum 30–44. The latter includes the following statement (at p. 20):

   "Plaintiffs' claim in federal court is not primarily that their rights under state law have been breached—though the Plaintiffs do argue that too. The Plaintiffs' argument is rather that a determination of the Aladdin Hotel Corporation's state law rights—of the extent of its property interest—requires a due process hearing."

2. Appellants urge that even if appellees alleged a claim under § 1983, the district court should

have abstained from exercising its jurisdiction on the basis of either *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The majority opinion does not reach this issue because, in their view, the district court had no subject matter jurisdiction in the first place. There was nothing to abstain from exercising. I do not believe that the general principles of abstention apply to the particular circumstances of this case.

federal court as a matter of federal constitutional law. Plaintiffs, however, had no chance of success on the merits as thus defined. The only federal constitutional claim on which they had the requisite minimum chance of success was a claim for denial of procedural due process.

On any federal due process claim, plaintiffs could establish the minimum probability of success on the merits only if they could show the deprivation of a protected property interest. Not all rights and privileges are entitled to federal due process protection. The Fourteenth Amendment "property" interests entitled to protection are created by state law rules and understandings. *Board of Regents v. Roth,* 408 U.S. 546, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). There must be a legitimate claim of entitlement to the benefit, not merely an abstract need or desire for it. *Id.*

Aladdin initially did have a property interest as a licensee that was both state-created and federally-protected against deprivation without due process. See *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 355 (1979); Nev.Rev.Stat. § 463.312, *et seq.* However, Aladdin contracted away this interest, as it legally could, in exchange for a limited, conditional right to operate the casino under the terms of the June 14, 1979, agreement and order of the Commission. Since the existence and legal significance of any remaining property interest depended upon this agreement and order, it was appropriate for the court to examine these instruments from this standpoint, although not for the purpose of adjudicating a breach of contract question. See, e. g., *Board of Regents v. Roth, supra,* 408 U.S. at 578, 92 S.Ct. at 2709–10 (examining terms of employment contract to determine whether university instructor had protected property interest in being rehired).[3]

If the agreement and order merely allowed Aladdin to continue operating while the HCA purchase and license application were being considered, then this specific property interest was by its own terms extinguished when the HCA transaction fell through, leaving no property interest which required federal due process safeguards when the revocation order was finally imposed on August 6, 1979. In that case, plaintiffs' claim would have to be dismissed for failure to state a claim on which relief could be granted.

The district court however, interpreted the agreement and order broadly as giving Aladdin an open-ended right to continue operation of the casino for a reasonable period while seeking a purchaser. This interpretation is erroneous as a matter of law, since there was no reasonable basis for it. The language of the agreement and order indicates that the Commission agreed to stay the revocation on the condition that a license application be filed in connection with the proposed purchase by HCA.[4] The

**3.** The appellees and the majority properly view the interpretation of the agreement as a question of state law. The majority, however, seeks to avoid holding that any dispute over the operation or interpretation of a license granted by a state agency gives rise to federal jurisdiction to decide questions which are purely matters of state law. It is not necessary to adopt such a broad holding in order to find that under the particular circumstances of this case, examination of the agreement and order was necessary to determine whether a property interest remained after Aladdin contracted away its usual interest as a licensee.

**4.** The Order, which revoked Aladdin's gaming license, stated in ¶ 4:

"This Order shall not be effective until the date this Commission acts upon the application for licensure in connection with the purchase of the Aladdin Hotel Corporation *provided* that the following terms and conditions are met: . . . (b) That the applications for licensure necessary in connection with the proposed purchase of the Aladdin Hotel Corporation, under a contract with Holding Corporation of America entered June 11, 1979, be filed as soon as practicable. Should any of the above conditions, in the determination of this Commission, not be met, this Order shall be effective immediately upon such determination by the Commission. In the event that the Commission approves the acquisition of the Aladdin or its stock by any purchaser, the revocation of the Respondent Corporation's license may be deferred until such time as the Commission deems appropriate."

Commission also reserved *its* right to defer revocation in the event it should approve the acquisition of Aladdin "by any purchaser." In its subsequent letter of July 6, 1979, the Commission said that if another purchaser was found *within 30 days*, it would consider that fact. Statements made by the Commission counsel and chairman indicating a desire to keep the casino open do not change the basic nature of the agreement and order, although they may clarify the motive for staying the revocation.

While rejecting the district court's broad view of the agreement and order, I believe they were susceptible of an interpretation by which Aladdin retained some conditional right to continue operating despite the failure of the HCA transaction and did not give up all its procedural due process rights when it waived its right to challenge the revocation because of the felony conviction. Specifically, Aladdin retained the right to continue operating until such time as the Commission determined that it was in violation of the terms of its conditional license.[5] That determination should have been accompanied by procedural due process safeguards: formal notice and a hearing, either before final revocation, *Bell v. Burson, supra,* or promptly following suspension, *Barry v. Barchi, supra.* At such hearing the Commission would consider the conditions stated in the agreement and order, whether the conditions had been met or breached, and whether there remained any other rea-

son to defer final revocation of the gaming license (such as the pendency of another purchaser's application).[6]

The district court found that plaintiffs had been denied such procedural safeguards but failed to make the remedy commensurate with this denial. The court instead, in effect, gave appellees what amounted to specific enforcement of their claimed substantive contract rights. Their entitlement to *that* relief was exclusively a state law matter. The district court should simply have sent the case back to the Commission for the procedures which had been withheld and should not have attempted to put itself in the place of the state agency.

The district court thus abused its discretion by failing to tailor the preliminary injunction to the only federal constitutional claim on which plaintiffs had the requisite minimum chance of success—deprivation of procedural due process. The court implicitly proceeded on the erroneous legal premise that plaintiffs would be entitled as a matter of federal constitutional law to specific enforcement of whatever substantive contract rights were created by the agreement and order, as erroneously construed by the court.

For these reasons, I concur with the majority's conclusion that the preliminary injunction should be reversed. However, the case should not be remanded with instructions to dismiss but with instructions to

---

The Stipulated Proposal, upon which the Order was based, stated in ¶ 3(e):

"That the order not be effective until the date *this Commission acts upon the application* for licensure in connection with the purchase of the Aladdin Hotel Corporation *provided* that the following terms and conditions are met: . . . (2) That the applications for licensure necessary in connection with the proposed purchase of the Aladdin Hotel Corporation, under a contract with Holding Corporation of America entered June 11, 1979, be filed as soon as practicable. Should any of the above conditions, in the determination of this Commission, not be met, this order shall be effective immediately upon such determination by the Commission. In the event that the Commission approves the acquisition of the Aladdin or its stock by any purchaser, the revocation of the Respondent

Corporation's license may be deferred until such time as the Commission deems appropriate".

5. The Order did not provide for automatic revocation of the license if the HCA purchase fell through. Rather, it said the revocation would become effective upon a determination of the Commission that any of the conditions had not been met. See note 4, *supra.*

6. The district judge put it in contract terms: "If [the state] claimed the breach, then they were duty bound to issue an order to show cause to these licensees to come in before a hearing duly constituted before this Board with the power to make actual findings and hear the matter of the breach." Reporter's Transcript of Rulings on Plaintiffs' Motion for a Preliminary Injunction, August 13, 1979, p. 20.

vacate the orders, to consider whether the indicated procedural relief is still warranted in view of subsequent developments and present circumstances, and to take appropriate action. Accordingly, I dissent from the order of dismissal.